F. G. BRUCKMAN, Respondent, v. HARGADINE-McKITTRICK DRY GOODS COMPANY, Appellant.

St. Louis Court of Appeals, January 7, 1902

1. **Contract: WRITTEN CONTRACT: ORAL CONTRACT.** A contract, partly in writing and partly oral, is in legal effect an oral contract. And this occurs where there is at first a written contract and afterwards it is changed orally.

2. **Statute of Frauds: CONTRACT.** To take a case out of the statute of frauds, requiring certain agreements to be in writing, the contract must be evidenced by the writing and can not be pieced out or added to by oral testimony.

3. **Lease: DEFINITION OF.** A lease is a contract for the possession and profits of lands and tenements on the one side, and the recompense of money or property on the other.

4. ——: ——. In the case at bar, defendant leased no land or tenement from the plaintiff but contracted to pay him for the use of personal property to be put in a tenement which it occupied under lease from a third party.

5. **Contract: WHEN TIME IS ESSENCE OF.** In the case at bar, time was of the essence of the option and defendant was not entitled to use the property for another day longer than one year without a new contract.

6. **Contract: OFFER, ACCEPTANCE OF.** If A offers B a sum of money to do a particular piece of work and B makes no reply but does the work, A is liable to B for the sum he offered to pay for the work.

7. ——: ——. In the case at bar, plaintiff offered defendant the use of the plant for one year or longer after December 1, 1897; defendant said nothing but retained the plant and used it. This was evidence of defendant's acceptance of the offer.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

REVERSED AND REMANDED.

### STATEMENT OF THE CASE.

*The Pleadings.*—The material parts of the petition are that defendant is a corporation; that on July 22, 1895, plaintiff entered into a written contract with defendant whereby for a certain rental plaintiff agreed to install in defendant's business house on Washington avenue in the city of St. Louis, an electric light plant consisting of an engine and a dynamo for forty arc lights and two hundred sixteen-candle-power incandescent lights, and that plaintiff should install all the necessary steam piping for said machinery and furnish and hang on said premises, at points to be directed by defendant, the arc and incandescent lights and the wire to hang the same and to keep all the machinery in thorough repair and to furnish all carbons and all the incandescent lamps that might burn out during the life of the contract. That for said plant and light defendant agreed to pay one hundred and seventy-five dollars a month rent from the completion of the plant until the first day of December, 1897, and after that date to pay a monthly rent of one hundred and fifty dollars for a period of

one year or longer at the option of the defendant. That subsequent to the execution of said contract it was mutually agreed between the defendants and plaintiff that the number of arc lights should be increased to forty-two at a monthly rental for each extra light of two dollars and fifty cents; that the number of incandescents should be increased to two hundred and thirty-six at the monthly rental for each extra incandescent light of twenty-five cents, and that plaintiff should do the carboning for the said arc lights instead of the same being done by the defendant, and plaintiff receive thirty dollars per month therefor; and that the plaintiff performed each and every agreement of the said contract and defendant paid the full amount agreed to be paid as rent up to and including June, 1898, but has wholly failed to pay the rent for August, September, October and November, 1898. The petition ends with a prayer for judgment for seven hundred and ninety dollars with interest upon the several monthly amounts and the costs.

The answer is as follows:

"Defendant for further answer states that on July 22, 1895, the defendant did enter into a contract with the plaintiff whereby the plaintiff agreed to install an electric light plant in the store building then occupied by defendant at the southeast corner of Eighth street and Washington avenue in the city of St. Louis; that in consideration thereof the defendant agreed to use said electric light plant until the first day of December, 1897, and pay therefor a monthly rental of one hundred and seventy-five dollars from the time of the completion of said plant up to the said first day of December, 1897. And it was further agreed that defendant should have the option to use said electric light plant for the further period of one year after December 1, 1897, and if the defendant exercised such option for one year it was to pay therefor a monthly rental of one hundred and fifty dollars. Defendant states that it did not exercise its option and privilege of re-

newing or extending said contract for the period of one year after December 1, 1897. Defendant states that it has paid to plaintiff all the rent for said electric light plant accruing under said contract above mentioned and is not indebted to plaintiff in any sum or sums whatever.

"That whether the expiration of the contract between plaintiff and defendant was December 1, 1897, or one year later, the contract could not be fully performed within one year from the making thereof, and was not in writing but a parol contract and therefore void under the statute of frauds."

The reply was a general denial.

*The Evidence.*—The portion of the written contract to be noticed here is as follows:

"The said party of the second part (Hargadine-McKittrick Dry Goods Company), in consideration of the faithful performance of these covenants, hereby covenants and agrees to pay to said party of the first part a monthly rental of one hundred and seventy-five dollars from the time of the completion and successful operation of the said plant, until the first day of December, A. D. 1897, and after that time (the first day of December, A. D. 1897), to pay a monthly rental of one hundred and fifty dollars a month during the continuation of this lease, which it is mutually agreed shall be for a term of one year or longer at the option of the second party."

The claim for thirty dollars per month for the carboning of the arc lights was abandoned on the trial and need not be further noticed. The plaintiff installed the plant as agreed upon in the written contract and under the subsequent agreement put in thirty-six extra incandescent lamps and two extra arc lights and the defendant continued to use the plant and lights and to pay the agreed rent for the installation of the plant up to and including June, 1898.

The evidence in respect to the extra lamps tends to prove that after the written contract was executed defendant

verbally requested that they be put in by the plaintiff and agreed to pay as rent thereon two dollars and fifty cents each for the arc lights and twenty-five cents each for the incandescent lights per month, and that this rental was the same as that charged for like lamps in the written contract and that all of these extra lamps, or at least ninety per cent of them, were put in prior to January 1, 1896; that they were not all put in at one and the same time but at different times as the defendant would request.

Plaintiff rendered monthly bills for the rent up to and including June, 1899. These bills were all for the same amount and were in the following form:

"June 1, 1898.
"Hargadine-McKittrick Dry Goods Company,
　　　"To Electrical Engineering Co. (E. G. Bruck-
　　　　　man) Dr.
"To lighting building month of June . . . .$175.00
"To 36 incandescent lamps at 29c. each. .　10.14
"To two extra arc lights at $2.90 each. . . .　5.80
"To carboning one month, per contract. . .　30.00

　　　　　　　　　　　　　　　　　　　　　$220.94
"O. K., H.-McK.
　　　　　　　"Paid, June 1, '98, E. G. Bruckman."

The defendant had a lease on the building which expired on December 1, 1897, and it removed from the premises before July 1, 1898, and refused to pay any rent after June, 1898.

Plaintiff, in explanation of his action in rendering bills after December 1, 1898, for the one hundred and seventy-five dollars instead of one hundred and fifty dollars rent per month, testified, that after the completion of the contract he gave a memorandum for making out the monthly statements of rents to become due to his stenographer with instructions

to make them out each month and that she continued to do so without any further instructions; that after December 1, 1897, defendant advanced him money on the rent to become due and took his notes; that when it ceased to pay rent he gave credit for the amount collected over and above what would be due on the basis of one hundred and fifty dollars per month. Neither before nor after December 1, 1897, did defendant notify the plaintiff that it would or would not renew the lease for one year or longer, but that it continued to pay the monthly rent bills as presented by plaintiff up to and including June, 1898. Plaintiff denied that he knew the defendant was occupying the building under a lease or had any knowledge or information as to how it was occupied.

*The Instructions.*—None were asked or given on the part of the plaintiff. For the defendant the court declared the law as follows:

"The court declares the law to be that if the court finds from the evidence that after the execution of the written contract, dated July 22, 1895, introduced in evidence, the parties made a subsequent agreement for further service; and if the court further finds that no definite time was fixed for the duration of such extra service at the time of making the contract therefor, and further finds that defendant has paid plaintiff for such extra service for the time during which it used the same, then the plaintiff is not entitled to recover anything on account of the agreement for such extra service and the court will not consider the same in estimating the amount of plaintiff's damages, if the court should find in favor of plaintiff under the other declaration of law."

The court sitting as a jury rendered judgment for plaintiff for seven hundred and sixteen dollars. A timely motion for new trial was filed by the defendant which the court overruled, whereupon defendant appealed.

*Johnson & Richards* for appellant.

(1)    Plaintiff seeks to recover upon one single contract, partly written and partly oral, and has declared on the agreement as modified.  Lanitz v. King, 93 Mo. 513; Sutter v. Raeder, 149 Mo. 297.  Plaintiff himself has, throughout this case, treated the transaction as one contract and he must be judged by the court upon that theory.  (2)  A written contract, subsequently modified or added to by parol agreement, becomes a new contract and becomes wholly a parol contract, within the meaning of the statute of frauds.  Bishop on Contracts, sec. 164; Ringer v. Holtzclaw, 112 Mo. 519; Rucker v. Harrington, 52 Mo. App. 481; Miller v. Goodrich, etc., Co., 53 Mo. App. 430.

*Jno. H. Drabelle* for respondent.

(1)    If the petition contains two or more causes of action stated in one count, the same is subject to demurrer on that ground, and if no such demurrer was interposed, the objection is deemed waived.  R. S. 1899, sec. 598, 602.  (2) If the petition was subject to the objection of duplicity, the remedy was a motion to strike out, and not to make the same more definite and certain.  R. S. 1899, sec. 613; St. Louis v. Wetzell, 130 Mo. 613.  (3)  Therefore, on the record of this case, the lower court properly overruled the motion to make the petition more definite and certain on the grounds stated in said motion.  (4)  And, therefore, the defendant has waived any objection because the petition stated several causes of action in one count, or because the petition set out, in support of a single demand, several distinct matters, any one of which would be sufficient to support it, which under the law constitutes duplicity in pleading.  The written contract of July 22, 1895, is not ambiguous in its meaning.  It is so plain that only one meaning can be attached to it, and

that meaning must be enforced. Gas Light Co. v. St. Louis, 46 Mo. 127. Ambiguity consists in duplicity, indistinctness, or uncertainty of an expression used in a written instrument; the effect of words that either have no definite sense, or else a double one. 1 Am. and Eng. Ency. of Law (1 Ed.), p. 525. (5) Even should the defendant's construction of said contract be right; that is to say, that it had an option to rent the plant for another year after December 1, 1897, at a reduced rental, the evidence in the cause shows that defendant, by using the plant after said date and paying the rental therefor up to July, 1898, without saying a word to plaintiff, knowing the plaintiff's construction and claim as to his rights and not denying or objecting to the same until that time, exercised its option, if it had one under the contract, and must be held to be bound to pay the rent for the full year. It is not necessary to show that the exercise of the option was by writing or "by word of mouth." It can be shown by the acts and conduct of the defendant. This principle is so old that no authorities are necessary, except a text-book. 3 Am. and Eng. Ency. of Law (1 Ed.), pp. 843, 858. (6) And with respect to the statute of frauds, the writer on contracts cited by appellant declares the rule to be that "agreements which, to be valid, must by the statute of frauds be in writing, can not be orally varied. The admission of the evidence would introduce a repugnancy, therefore, it must be rejected; or otherwise expressed, the oral is void, by reason of which it can not annul what is valid. Still, there are cases in which the intent to depart from the writing by substituting an oral provision is so evident as to render the rejection of the latter impossible, and then the written contract being gone, the whole will come under the condemnation of the statute. On the other hand, if the oral variation stops at a point which leaves a sufficient memorandum in writing to satisfy the statute, it may have effect, the same as

though no writing was originally necessary." Bishop on Contracts, sec. 771; Rucker v. Harrington, 52 Mo. App. 488.

BLAND, P. J.—I. The theory of the plaintiff is that the suit is on the written contract. That the verbal agreements made from time to time for additional lamps were but additions to the things to be furnished under the original contract and that this agreement did not modify or change the written contract, and this was the theory upon which the case was tried and which was evidently adopted by the trial court. The contention of appellant is that these subsequent oral agreements modified and changed the written contract, and that the modification threw the whole contract into parol, and that the contract is void under the statute of frauds as it was not to be performed within one year.

We do not think the written contract was modified by the verbal agreements. Not a word, line or syllable of that contract was changed or modified in the least by any of the verbal agreements. Everything to be done under it remained to be done just as provided for in the contract and no modification of the machinery to compose the plant, or the number or quality or the power of the lamps to be furnished, nor of the rent to be paid nor of the duration of the contract, was in the least changed by the subsequent agreements. The verbal agreements made after the written one, provided for additional lamps at an agreed rental per lamp per month. No resort to the written contract was necessary to understand their terms and they were complete contracts in themselves, separate and apart from the written one; as much so as was the contract to furnish a man thirty dollars per month to attend to the lamps after the plant was fully installed. If there was any doubt on this point that doubt is removed by the conduct of the parties themselves who treated the several agreements as separate and distinct contracts as is shown by the monthly statements of the rent accounts rendered de-

fendant from month to month by the plaintiff and paid by defendant without objection.

The petition contains but one count when it should have contained three. This fault, however, was waived by the answer. The court correctly declared the law applicable to the contracts for the extra lamps in the instruction, supra, but found against the defendant for the rents on the extra lamps on the theory, as we must conclude, that the contract for these lamps was an addition to the written contract and was protected from the operation of the statute of frauds for the reason that the original contract was in writing. This was manifest error. The law is that, "A contract partly in writing and partly oral is, in legal effect, an oral contract. . . . . This occurs where there is at first a written contract and afterwards it is changed orally." Bishop on Contracts, sec. 164. To take the case out of the statute of frauds, requiring certain agreements to be in writing, the contract must be evidenced by the writing and can not be pieced out or added to by oral testimony. Ringer v. Holtzclaw, 112 Mo. 519; Rucker v. Harrington, 52 Mo. App. 481; Miller v. The Goodrich Bros. Banking Co., 53 Mo. App. 430.

II. The right of defendant to the use of the plant and lamps expired, according to the contract, on December 1, 1897, but it is provided in the contract that the contract might be continued thereafter for one year or longer at the option of defendant. There is a disagreement between the parties as to the meaning of this option clause, but it does not seem to us that the clause is susceptible of more than one construction. The contract expired on December 1, 1897. It could not be renewed or continued without the defendant elected to renew it and it could not be renewed for a shorter period than one year; but it might have been renewed at the election of defendant for any period in excess of one year. The option to renew was to renew for one year or longer and the contract was renewed for one year if the evidence proves

that defendant exercised its option to renew for that time. There was no formal notice to plaintiff that defendant would, or intended to renew the contract; but the defendant continued to use the plant and to pay the rent at one hundred and seventy-five dollars per month up to and including June, 1898.

The contention of appellant is that from the expiration of the contract to the time it ceased to pay rent the relation of tenant from month to month subsisted between it and appellant. The vice of this contention is that the written contract, though termed by the parties a lease, did not create the relation of landlord and tenant between plaintiff and defendant. The contract is not a lease but the hiring of the use of personal property. Plaintiff had no interest as lessee or otherwise in the building or ground occupied by the defendant and had nothing to lease. A lease is defined to be "a contract for the possession and profits of lands and tenements on the one side and the recompense of money or property on the other." 18 Am. and Eng. Ency. of Law (2 Ed.), p. 597; Bouvier's Law Dic.

Defendant leased no land or tenement from the plaintiff but contracted to pay him for the use of personal property to be put in a tenement which it occupied under a lease from a third party. The contract being one of hire of personal property, it is pertinent to inquire as to the situation of the property and the relative rights and duties of the plaintiff and defendant in respect thereto at the expiration of the term for which it was hired, to-wit, December 1, 1897. The property was in the possession of the defendant and situated in its building. It had in its hands and under its notice the option or offer of plaintiff to rehire the use of it for one year or longer at one hundred and fifty dollars per month. The offer was good for one day and no longer, as time was of the essence of the option. Longworth v. Mitchel, 26 O. St.

334; Barrett v. McAllister, 33 W. Va. 738; Weaver v. Burr, 3 L. R. A. 94; Smith's Appeal, 69 Pa. 474.

The defendant was not entitled to use the property for another day without a new contract. It had either to exercise the option to keep the plant for one year or longer, or to make some other arrangement with plaintiff by which it might continue its use. The contention of defendant is that it was permitted by the plaintiff to continue the use of the plant from month to month at the price of one hundred and seventy-five dollars per month. The fact that plaintiff continued to demand and the defendant to pay one hundred and seventy-five dollars per month after the expiration of the contract, when, if defendant had exercised its option to renew the contract, the rent due would have been but one hundred and fifty dollars per month, lends strong support to this contention.

The evidence of respondent that the monthly bills were made out by his stenographer and that money was advanced on them by the appellant before the rent became due and that he had given credit on the rent account for all that he had received should be considered as tending to prove that he did not have a tacit understanding with respondent that it might retain the plant from month to month. On this feature of the evidence the court refused the following instruction:

"The court declares the law to be that by the terms of the written contract dated July 22, 1895, and introduced in evidence, defendant was to pay plaintiff the sum of $175 per month until December 1, 1897, for the use of the electric light plant described in said contract, and on December 1, 1897, defendant was to have the option whether it would take the plant for another year at a rental of $150 per month, and if the court finds from the evidence that defendant did not exercise its option to take such plant for another year at $150 per month, but continued to use such plant from month to month, paying therefor the original rental of $175 per month,

Vol 91 app—30

and if the court finds that defendant has paid plaintiff for all the time it actually used such plant, then plaintiff is not entitled to recover, and the judgment should be for the defendant."

From its refusal to give this instruction it is impossible to determine upon what theory of law the court decided the case. The vital question in the case was whether or not respondent had exercised its option to renew the contract for a year or longer, or continued the use of the plant from month to month under a tacit understanding with respondent that it might do so. We are to infer from the action of the court in refusing the instruction that the court did not consider this question of fact at all and arrived at its conclusion upon some other hypothesis. We think that the conduct of defendant in rendering and collecting bills at the old price is evidence tending to prove that there was a tacit understanding between he and appellants that the latter might continue to use the plant from month to month.

On the other hand appellant's retention and continued use of the plant after the expiration of the original time of the hiring was notice to plaintiff that defendant had accepted the option. Allen v. Chouteau, 102 Mo. 309; Riggins v. Railroad Company, 73 Mo. 598. If A offers B a sum of money to do a particular piece of work and B makes no reply but does the work it would not be contended that he did not accept the offer and that A was not liable to him for the sum he offered to pay for the work.

Plaintiff offered defendant the use of the plant for one year or longer after December 1, 1897, at one hundred and fifty dollars per month. Defendant said nothing but retained the plant and used it. This was certainly evidence of defendant's acceptance of the offer. Bishop on Contracts, sec. 330. Acting under a proposal may constitute an acceptance. Graham v. State ex rel., 66 Ind. l. c. 394. And the retention of the possession of the plant and its continued use

after December 1, 1897, changed the option to an executed contract for the use of the property for one year in the absence of a different agreement. Byers v. Denver C. R. Co., 13 Colo. l. c. 555, and cases cited. But it is a question of fact, not of law, under the evidence in the case whether or not appellant exercised its option, or held the plant from month to month by the consent of respondent. That this question may be tried under proper instructions, we reverse the judgment and remand the cause.