HARRY BERNBLUM v. TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant.—125 S. W. (2d) 844.

Division One, March 8, 1939.

*Davis & Davis* and *Mosman, Rogers Bell & Buzard* for appellant.

*McVey & Randolph, J. Robertson Clagett* and *Chapman & Chapman* for respondent. .

HAYS, P. J.—Action on an accident insurance policy, brought by the assignee of the named beneficiary. Verdict and judgment went for the plaintiff for $9,957.50 and the defendant appealed. The decisive question is whether the conditional delivery of the policy remained conditional or whether it afterward became absolute.

This is a second appeal. The first is reported in 340 Mo. 1217, 105 S. W. (2d) 941. The statement of the case as contained in the former decision will be followed with such changes and additions as necessary to state the determinative facts as they appear in the printed records of the trials.

"The policy sued on stated that defendant 'does hereby insure James S. Glassco . . . against loss resulting from bodily injuries . . . through accidental means'; that 'this policy is issued in consideration of the premium of Ten and No/100 Dollars, for the term of three months to commence on the 29th day of November, 1930;' that 'this policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance;' . . . and that 'no change in this policy shall be valid unless approved by an executive officer of the company and such approval indorsed thereon.' When Glassco received this policy from the defendant's agent he signed a receipt (which the trial court refused to receive in evidence) which is as follows:

"'(This policy is received) for inspection only. This policy shall not take effect or be in any way binding upon the Company unless nor until the premium therefor is actually paid and this receipt is surrendered while I am in good health and free from injury, nor in any event unless paid within sixty days of the date of the policy.'
. . .

"It was admitted that Glassco had signed this receipt and had never paid the premium. (His father tendered it after his death.)"

Kornfeld, the soliciting agent, testified to an oral offer of credit made by him, accepted by Glassco and reduced to writing. The writing (inspection receipt) was excluded by the trial court.

About thirty days later the agent called Glassco on the telephone. Kornfeld testified concerning the call: "I had settled up with the Travelers Insurance Company and I informed him that they were expecting me to make some disposition at once of all items outstanding. I was attempting to determine just what his intentions were and asked him as a favor to myself to return the policy and allow me to rewrite the policy with the Federal Life, which company I signed a contract with on the date I settled up with the Travelers Insurance Company . . . He said . . . 'You'll be downtown in the next day or two, stop in the office and I'll just hand it over to you.' (He was concerned about this receipt that was outstanding and he wanted that returned.)" [The parenthesis was, on motion of plaintiff's counsel, stricken out.] This answer in its entirety was admitted in evidence in the retrial. And at the retrial Kornfeld testified that after that conversation (December 30, 1930) he never saw or communicated with Glassco again. Glassco died from injuries he received on January 1, 1931.

The evidence was substantially the same as that in the former trial touching the solicitation of the policy, the acceptance of the application therefor, the manual delivery of the policy together with the customary identification card, and of the agent's bill, and Glassco's possession of all those papers at the date of his injury. The first trial proceeded on the theory of absolute delivery of the policy to Glassco without payment of the initial premium but upon credit extended to him for the premium. The inspection receipt was admitted in the retrial. On the first appeal we held that the oral evidence touching the actual delivery of the policy and other papers to Glassco, and his retention thereof, was insufficient to make a prima facie case for plaintiff of completed delivery without excluding from view the inspection receipt, as was done. We further held that the oral offer, the fact of discrepancy between the dates of the policy and the bill and of the time of the delivery of them respectively, though some evidence of a credit arrangement, was insufficient to take the case to the jury because of the existence of the inspection receipt, and because of a certain conversation to be mentioned.

We pointed out, however, that the provision in the inspection receipt requiring its surrender, could not be permitted to defeat either a payment of the premium or a subsequent agreement for credit; and that, therefore, a case on the policy might be made on the theory that a credit agreement was made *after* the inspection receipt was signed; but that, even so, such evidence as plaintiff produced was not

sufficient to make a submissible case on the latter theory, "because the agent's positive testimony was that Glassco never did agree to pay for the policy, but finally rejected it." These holdings, it is admitted, constitute the law governing the retrial.

At the retrial respondent's right of action was predicated upon the theory of an oral offer made by the appellant of credit for the premium, an acceptance thereof by Glassco which was by him made known to appellant, and an agreement then and there made by Glassco to pay the offeror the premium. This, if established, would constitute a new contract, brought into existence by the meaning and mental intent of the parties as embodied in the conversation that occurred between Glassco and the agent on December 30, 1930. Matters antecedent thereto became, therefore, collateral in the retrial. The only direct evidence in relation to the making of a new contract—*a substituted contract*—is to be found in the testimony of the appellant's agent. It is upon this testimony that respondent places, and must needs place, his chief reliance—upon this, so far as it may be supported by the indirect evidence arising out of the circumstances that Glassco held in his possession at the time of his injury, the theretofore conditionally delivered (pursuant to the inspection receipt) other instruments noted. For it is obvious that just as the inspection receipt cannot serve to preclude a new offer and a new contract, so Glassco's holding of said other instruments cannot serve here to support the inferences attributed to them in our former decision upon the previous oral offer, and operating through the period, there considered. Putting the matter differently, the issue here, though similar to the former issue, is quite distinct and separate from it. So far as the inferential effect of Glassco's holding and placement of said instruments is here concerned, the inception thereof was simultaneous with the conversation of December 30, 1930.

The respondent rests his case in the main upon what his counsel developed in his cross-examination of Kornfeld at the retrial relative to the aforesaid conversation by telephone. It is a repetition and elaboration of the testimony given by him on the subject as developed at the first trial. Such as may be additional seems to be due to the circumstance that in the first trial, owing to objections and motions to strike and rulings of the court interposed, the appellant was hard put in developing the witness's testimony in chief, and owing to the further circumstance that there was substantially no cross-examination then by respondent's counsel on that subject. But quite the contrary was the cross-examination at the retrial. It was complete and searching, although somewhat confusing in that many of the questions were compounded of assumptions and inquiry, others compounded of contradictory elements that made the answers equivocal. The elements of the scattering answers will, in our consideration of

them, be taken in their logical relations in the conversation in its entirety.

The witness was asked whether, in January or February, 1931, he stated to Mr. Byrum (of counsel for respondent), in response to his inquiry concerning said conversation, that he (Kornfeld) in said conversation with Glassco by telephone, told Glassco of his intended change of companies and asked Glassco to bring the Travelers policy to Kornfeld's office where he could pick it up and return it to the Travelers Company so that Kornfeld could then rewrite Glassco in the Federal with a similar policy to take the place of the other, and that Glassco replied in "substantially these words: 'Come in and see me in the next few days and we will talk about the matter.'" Witness answered, "that was approximately what was said." Next the counsel after calling the witness's attention to his testimony given at the previous trial concerning the conversation (which we have set out in the forepart of this opinion) asked the witness if his answer just noted above ("come in and see me in the next few days and we will talk about the matter") was not, as he recalled it, in answer to witness's statement of the purpose and of his request for permission to rewrite in the Federal Company. The witness answered, "Yes, that's about it." On retrial he testified that Glassco never reported to him that he had accepted the policy, nor told him he would pay for it.

■ The substance of the argument advanced by counsel for the respondent is (a) that the fact of original delivery of the policy; the fact that Glassco, when he met with his injury, had the identification card on his person, the bill for the premium placed with current bills and the policy with others in the same drawer, together constituted substantial and conclusive evidence of the intention of Glassco to accept the policy and the offer of credit; (b) that "the remaining question then is, whether or not that intention on his part was made known to the appellant or its agent;" (c) that "the evidence available on this point came from" said agent "and concerned the telephone conversation" here under consideration; and (d) that such conversation when considered with the inferences and deductions, which spring from it, shows positive acceptance by Glassco of the policy and offer of credit and notice to and knowledge of the company, and that the contract was thereupon completed. We think the conclusion contained in proposition (a) supra, is not correct, and we so ruled (supra) in stating the theory of the case. Counsel's assertion that such conclusion is authorized by our holdings in the former appeal is also incorrect. The author there guardedly said that the elements contained in that proposition would be *some* (i. e. prima facie) evidence of a credit arrangement but for the receipt, and was careful not to intimate that it would be positive or substantial evidence of such an arrangement. In fact, the holding was, further, in

effect that that evidence was not only overcome but destroyed by the conclusive inspection receipt.

As has been seen above, the decisive question is, whether inherent in the conversation under consideration, there was a final mental accep-- tance of the policy by Glassco which was by him then and there com- municated to Kornfeld, and a promise made by Glassco and accepted by Kornfeld, to pay the latter the premium thereafter. And the burden rested upon respondent to prove these facts by substantial evidence, and there was no legal requirement that appellant prove that Glassco rejected the Travelers policy. This is the applicable rule because the question of new contract *vel non,* by the very na- ture, independence and completeness of the transaction, was encom- passed by the conversation of December thirtieth. Up to that time the delivery of the policy and the other papers was conditional, and Glassco's previous mental acceptance, if any, was in abeyance, and the delivery remained conditional.

The rule as approvingly stated in the former decision (340 Mo. 1. c. 1223, 105 S. W. (2d) 1. c. 943) is that "An acceptance of an offer to allow credit, if one was made, is as essential to make a valid agreement for credit, to change a conditional delivery of an insurance policy to unconditional delivery, as it is to make any other contract. Such an acceptance could not be merely a mental action or state of mind (as was contended by respondent on the first appeal), but would require a promise to pay made known in some manner to defendant. [Gillen v. Bayfield, 329 Mo. 681, 46 S. W. (2d) 571.]"

As applicable to the evidence now before us we approve also the following authoritative statement: "Acceptance (of an offer) must be unequivocal in order to create a contract." [Re-Statement, Con- tracts, sec. 58.] "An offeror is entitled to know in clear terms wheth- er the offeree accepts his proposal. It is not enough that the words of a reply justify a probable inference of assent." [Id. Comment: a.]

It is argued for respondent that by accepting the policy Glassco agreed to pay the premium for which he had received a bill. The citations (which follow) are not relevant and the proposition begs the question. [Bruckman v. Hargadine-McKittrick D. G. Co., 91 Mo. App. 454; 13 C. J. 274.] Besides, the previous delivery of the bill, and of the identification card as well, was as conditional as that of the policy, to which they were merely incidental.

It is contended that Kornfeld's testimony is discredited, even impeached. The propositions argued in support of this contention are these: Impeached (a) because at the conclusion of the cross-ex- amination about the telephone conversation the witness was asked: "Well, then you knew he wanted insurance? A. Sure I did. Q. He wanted insurance when you had that conversation with him? A. I told you he did. I was asking his permission to rewrite the policy." The witness did not testify that Glassco said he wanted insurance or

224

that he wanted the Travelers policy. So it is obvious that his answer just quoted was the inference that he drew from Glassco's statement there made to him; (b) because the witness admitted that Glassco asked him for the return of the inspection receipt. Relative to this, the record shows that Glassco asked if the receipt would be returned and was assured by the witness that it would be. Clearly related to that matter is counsel's attempt to show that the agent was switching —a term of sinister implication in insurance parlance, understood as applying to instances where an agent induces an insured to surrender a subsisting and operative policy and insure anew in the company which the agent represents (Sullivan v. Connecticut Mut. Life Ins. Co., 337 Mo. 1084, 88 S. W. (2d) 167, 168; State ex rel. Prewitt v. Thompson, 334 Mo. 144, 66 S. W. (2d) 109, 112)—as evidenced by the following colloquy: ''Q. What benefit was it to Glassco to switch to the Federal? A. He wasn't switching. Q. He wasn't switching? A. No, sir, because he wasn't a policyholder in the Travelers.'' [Last answer stricken.] That evidence lends no support to the inference respondent draws, namely, that Glassco then and there accepted the policy as a completed contract and agreed to pay the premium. If he had meant the latter, it seems strange he did not say he was going to keep the policy and pay for it. We are unable to perceive any inconsistency or self-contradiction on the part of Kornfeld in his recital of the elements of said conversation. Hence, it cannot be reasonably maintained that his evidence was impeaching, or even discredited as contended.

Discredited, it is contended, (a) because there was contradiction in Kornfeld's versions of the date of the manual delivery of the policy. In this regard the evidence discloses he testified in the first trial that from the fact the bill was dated December first, he delivered all the papers on that day; but on the retrial that he delivered them on perhaps the twenty-ninth of November and post-dated his bill, as the policy, the card and the inspection receipt bore that date. But further said, in substance, he did not definitely remember about it, and that he delivered all the papers together; (b) because the reason Kornfeld assigned for the conditional delivery of the policy was not true in view of the evidence, which showed Glassco had recently before gone into a paying business with his father with privilege granted by the father to make cash withdrawals without request and inferrably he had been doing so in making partial payments for an automobile he purchased within the year at a cost of $1600.

The inferences authorized by this are, if he was able to pay for it why did he not in the conversation offer to do so in exchange for the receipt; the fact he did not do so authorizes an inference that he had not made up his mind to accept the Travelers policy as completely and finally delivered. Surely, the inference respondent would draw is unwarranted because of its conflict with the clear, unequivocal

meaning of the express language of Glassco as proven by the positive, substantial and uncontradicted testimony of Kornfeld.

█ Respondent's prima facie case was made by the introduction of the policy, the application therefor, the identification card and the agent's bill, as indirect evidence from which a presumption, or inference, arose, that the delivery of the policy was absolute. The inspection receipt when introduced, being unimpeached, afforded conclusive evidence that the policy was not delivered as an unconditional contract of insurance. In treating of the case in its entirety we have taken into consideration as evidential facts the matters herein referred to as indirect evidence and as evidential inferences springing therefrom. Now, under all the evidence, it cannot reasonably, or with any degree of certainty, be said that the agent made Glassco any offer except to rewrite him in the Federal Company, or made Glassco any new offer of credit. Neither the circumstances nor the evidence shows that there was a meeting of the minds of the parties sufficient to form a completed contract of insurance. Of a certainty there was no evidence whatever to prove the indispensable requisite, namely, a promise or an agreement that Glassco would pay the initial premium. Indeed, there was a total failure of substantial and essential proof on the part of the respondent.

The inevitable conclusion is that the issue that was submitted to the jury was not an issue of fact for their determination, but an issue of law for the court to determine (Powell v. Mo. Pac. Ry. Co., 76 Mo. 80, l. c. 83-85), and that the error of the trial court in denying the demurrer to the evidence requires that the judgment be reversed. It is so ordered. All concur.