**ZEFF DISTRIBUTING COMPANY, Inc., a Corporation, Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Inc., a Corporation, and Swade Insurance Company, a Corporation, Respondents.**

No. 50293.

Supreme Court of Missouri,

Division No. 1.

April 12, 1965.

Rehearings Denied May 10, 1965.

Irving Achtenberg, Kansas City, Achtenberg, Sandler & Balkin, Kansas City, of counsel, for appellant.

Douglas Stripp, Landon H. Rowland, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for respondent, Aetna Casualty & Surety Co., Inc.

Morrison, Hecker, Cozad & Morrison, Karl F. Schmidt, Byron J. Beck, Kansas City, for respondent Swade Ins. Co.

HYDE, Presiding Judge.

Action in two alternative counts, the first seeking recovery of $25,000.00 against Aetna Casualty and Surety Company, Inc. (hereinafter called Aetna) on a claimed insurance contract for loss from theft. The second count sought, if there was no insurance contract in effect, to recover the same amount from plaintiff's insurance agent, Swade Insurance Company (hereinafter called Swade), for failure to keep insurance in effect. The court directed a verdict for Aetna and the jury's verdict was for Swade. Plaintiff has appealed from the judgment entered for both defendants.

We first will rule on plaintiff's claim of error for directing a verdict for Aetna but some of the facts stated on this issue will be material to plaintiff's claims of error in the trial on the second count. Swade had for several years prior to 1959 handled about half of plaintiff's insurance, while another agency had handled a substantial part. In 1959, Max Swade, president of Swade, told plaintiff's president, Carl Zeff, that he could get plaintiff better rates on policies in a package deal including a jeweler's block policy insuring against theft. Zeff told him to do so and on August 4, 1959, Swade obtained an oral agreement of Aetna, confirmed by letter of August 5, 1959, for coverage of $25,000.00 on jewelry stock of plaintiff in accordance with Aetna's standard jeweler's block policy. Plaintiff had not previously had this kind of theft policy but other insurance included replaced some policies plaintiff already had. Swade did not obtain and send in plaintiff's completed application for this policy to Aetna until September 28, 1959, and before a policy was issued plaintiff sustained a loss by theft on October 1, 1959, in excess of $25,000.00. That loss was paid by Aetna and this suit is for a second theft loss on December 10, 1959, for which plaintiff claims another $25,000.00 due from Aetna. Carl Zeff, plaintiff's president, said he did not know what companies had plaintiff's insurance but relied on Swade, or other agencies, to keep his insurance in force and that it was their custom to pay all insurance premiums at the end of each year.

On October 8, 1959, a week after the first theft, Aetna's Kansas City agent called Max Swade and told him Aetna wished to cancel the Zeff binder in view of the loss sustained, asking him to call as soon as the risk was replaced in another company. On October 23, 1959, Aetna's agent again called Max Swade and told him Aetna would not cover beyond October 30, 1959, and that a binder would be sent for the period of October 1 to October 30 instead of issuing a policy. Plaintiff's evidence was that none of its officers or employees knew anything about these conversations. However, a written binder (designated Binder

No. 4) was issued on October 23, 1959, which stated the insurance was for a period of 87 days from August 4, 1959. This binder was found in plaintiff's files and produced at depositions taken in this case. Carl Zeff said he never saw this binder until after the second loss and plaintiff's bookkeeper did not recall seeing it until after the second loss. However, a proof of loss form for the first loss was signed, acknowledged and sworn to by plaintiff's vice president, David Zeff, on November 12, 1959, which stated the insurance was by Binder No. 4 "to expire 10–23, 1959." (The date of issuance instead of the date of expiration.) The loss for the first theft was not paid by Aetna until after the second burglary but Carl Zeff admitted he had a conversation with Max Swade (president of Swade) early in December before the second theft in which Max said "he thought that Aetna might want to get off the policy," or "would probably want to get off but that he (Swade) would take care of it." There were several variations of this conversation in Carl Zeff's testimony but his version was that he was not told by Max Swade that Aetna was off the risk.

Plaintiff claims it made a submissible case against Aetna, considering the evidence most favorably to it. Plaintiff says burden of proof of cancellation was on Aetna; that Binder No. 4 even if timely received was not proper notice of cancellation; that Binder No. 4 was not effective because not accepted by plaintiff (because not signed by plaintiff on line for signature of insured); and that proof of loss signed by plaintiff did not establish cancellation prior to the second loss. Plaintiff also argues that cancellation could only be by the notice as stated in Aetna's standard jeweler's block policy (although none was ever issued); that the proof of loss was not notice of cancellation and was inadmissible because of Aetna's admission that the only communication of termination was Binder No. 4; and that the significance of the proof of loss was for the jury to determine, saying the expiration date therein stated may have been inserted after it had been signed. However, there was no testimony that the proof of loss was not complete when executed by plaintiff; and David Zeff, plaintiff's vice president, said when he signed it he saw the statement on it that it "has been carefully read and is a full, complete and true warranty," and that he took it to another office to be notarized. See Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333, 341. Plaintiff further claims that Binder No. 4 was never intended as a contract of insurance "but as a method of cancellation of the existing oral binder and as a document upon which to base the payment of the prior loss."

Aetna says this is not a cancellation case but rather a case where the insurance expired by its terms, prior to the second loss sustained by plaintiff; but plaintiff contends the written binder was intended to be a method of cancellation. The insurance began on a temporary basis (an oral binder confirmed by letter) pending written application which was delayed almost two months so that no policy was ever issued. It is said: "Such temporary insurance constitutes insurance for a reasonable time considering all the attendant conditions." 29 Am.Jur. 595, Insurance, Sec. 205; see also annotation, 2 A.L.R.2d 959; 44 C.J.S. Insurance § 230, pp. 960, 961. When a loss having occurred so soon after the application was received, the application was never accepted but Aetna instead of issuing a policy issued its written binder fixing a definite expiration date of October 30, 1959. Thereafter, the prior expiration of this insurance binder was stated in the proof of loss executed by plaintiff on November 12, 1959. Aetna cites Seiderman v. Herman Perla, Inc., 268 N.Y. 188, 197 N.E. 190, 191, in which it was contended that a letter requesting return of a binder for cancellation within five days (which by its terms expired the next day after the letter was written) was an extension of the binder. The court held the insurance expired on the date

stated in the binder, saying: "This is not a case of attempted cancellation of a policy or binder before it expired according to its terms, by the service of notice upon a broker."

On the binder only, we do not consider the present case to be as strong a case as the Seiderman case (because here insurance began with an indefinite oral binder) but considering Binder No. 4 with the acknowledgment of termination in the Proof of Loss, we find the situation to be just as conclusive. Therefore, our view is that the court correctly directed a verdict for Aetna. Carl Zeff, while saying he never saw Binder No. 4 until long after the second theft, did say in his deposition that he thought it was received by Zeff in October 1959 because it was written in October. However, there is no doubt that the proof of loss, based on this binder and specifically referring to it, was executed on November 12, 1959, almost a month before the second theft, and stated an expiration date prior to that time. Although the date of the binder was given erroneously as its expiration date rather than the expiration date stated in the binder, this proof of loss was a clear acknowledgment that the insurance had expired prior to the date the proof of loss was executed. Since it was an acknowledgment of termination rather than a communication of termination, plaintiff's contention concerning Aetna's admission cannot be sustained. No policy was ever issued and under the circumstances the issuance of the written binder excluded any idea of issuance of a policy. Plaintiff knew that its application for a policy had been signed only three days before the first burglary so, when without the issuance of a policy, plaintiff's vice president executed the proof of loss, referring to the written binder and showing an expiration date of the binder prior to the date of his execution of the proof of loss, plaintiff must be held to have acknowledged its insurance was under the binder and to have known that its temporary insurance had then expired by

its terms. In Bernblum v. Travelers Insurance Co., 344 Mo. 217, 125 S.W.2d 844, 848, we held that a receipt signed by an alleged insured conclusively showed only a conditional acceptance so that the policy never became effective because there had not been compliance with the conditions stated in the receipt. Thus the beneficiary was held bound by the terms of the receipt. Likewise, in Tabler v. General American Life Ins. Co., 342 Mo. 726, 117 S.W.2d 278, 283, we held the annual date for premium payments stated in the policy accepted by the insured, and stated in an application for reinstatement afterwards signed by him, controlled over a later date on which the first premium payment was made. As we said in Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101, 57 A.L.R. 615: "When the proof is documentary, or the defendant relies on the plaintiff's own evidential showing (or evidence which the plaintiff admits to be true), and the reasonable inferences therefrom all point one way, there is no issue of fact to be submitted to the jury." See also Smith v. Prudential Ins. Co. of America, Mo.Sup., 300 S.W.2d 435, 440. On the documentary proof herein, plaintiff cannot be permitted to enforce this insurance agreement, after signing a statement that it had expired as the basis for collecting a loss under it.

On plaintiff's claim against Swade, its evidence was that Swade had handled a substantial part of its insurance for about nine years prior to 1959, when Swade got the jeweler's block insurance from Aetna; that plaintiff authorized Swade to place its insurance where Swade thought proper; that companies would be changed from time to time but plaintiff would not learn of the change until a new policy was received; and that plaintiff paid all insurance premiums to Swade once each year near the end of the year. Plaintiff's evidence also showed that, prior to the second loss, plaintiff was never told by Swade, prior to October 30, 1959, that Aetna intended to cancel

or thereafter that it had cancelled or that Swade was attempting to get insurance for plaintiff Lloyds in London through Sayre & Toso but had not obtained such insurance.

Plaintiff calls attention to the following actions and dates (to which we have made some additions) to show negligence of Swade.

October 1, 1959—First theft occurred

October 8 Aetna notified Swade that Aetna wanted to cancel and wanted to be told when Swade had obtained insurance for plaintiff elsewhere.

October 23 Aetna notified Swade Aetna would not cover beyond October 30.

October 27 First action by Swade. Its office manager, Stern, mailed request to Frost of Sayre & Toso to seek insurance for plaintiff.

October 28 Frost received request from Swade.

October 30 Aetna's deadline to Swade.

November 2 Frost mailed proposal to London without inspection report.

November 9 Frost received cable from London requesting inspection report.

December 4 Frost mailed London inadequate inspection report (applicable to fire insurance not theft).

December 10 Second theft occurred.

December 12 London cabled Frost "unable proceed without inspection report requested."

December 21 Plaintiff sent check to Swade for $4650.84 for premiums due on all insurance for the year 1959.

December 23 Frost forwarded inspection report to London.

———◆———

Thereafter, during the month of December, plaintiff obtained jeweler's block insurance through another agency on a binder which was replaced by a policy within five weeks.

Both thefts were very much alike. There was no breaking into plaintiff's building from the outside. It was assumed that someone had been hiding in the building when it was locked for the night. Each time there was a breakout from inside which set off the burglar alarm. Each time diamonds and watches were missing and many watch boxes were left piled on the floor. Other facts will be mentioned later in the opinion.

Swade contends that it was entitled to a directed verdict claiming (1) that plaintiff did not prove that failure (which it does not concede) to exercise reasonable skill, care and diligence was the proximate cause of plaintiff not having a policy which would have covered the second theft loss; (2) that plaintiff had notice on November 12, 1959, when it executed the proof of loss, that it was not covered by theft insurance of Aetna and there was no evidence that Swade had any duty to plaintiff which it breached prior to the second theft; and (3) that the proof of loss conclusively showing plaintiff had such notice, plaintiff's evidence showed it could have avoided the second theft loss by applying for such a policy to

another agency which later did get such insurance for it. As to the first, Swade argues that plaintiff did not prove the underwriters at Lloyds would have issued a policy covering plaintiff's second loss but actually proves the contrary, saying Swade was still attempting to obtain such a policy on December 10, 1959; citing Rovella v. Standard Acc. Ins. Co., 121 Conn. 134, 183 A. 377; Rayden Engineering Corporation v. Church, 337 Mass. 652, 151 N.E.2d 57; Holskin v. Hurwitz, 211 A.D. 731, 208 N.Y.S. 38; DeWees v. Cedarbaum, (Okla.) 381 P.2d 830; Rodgers Insurance Agency, Inc. v. Andersen Machinery, 211 Or. 459, 316 P.2d 497, 501. However, this overlooks plaintiff's evidence that Swade agreed to keep it insured and did not tell plaintiff it was not insured.

 Our view is that plaintiff made a submissible jury case. Swade knew on October 8, 1959 that Aetna would not continue to carry the insurance and was asked to notify Aetna as soon as the risk was replaced in another company. Plaintiff's evidence showed that plaintiff was never informed of this, and even when on October 23rd Swade was told that Aetna would not continue its insurance beyond October 30th not only was plaintiff not informed but Swade did nothing to replace the insurance until October 27th when it wrote a letter to Sayre & Toso (received by them on October 28th) to get a policy from London. Moreover, Swade did not tell Sayre & Toso that Aetna would go off the risk on October 30th, nor inform plaintiff about this. "[A] broker or agent who, with a view to compensation for his services, undertakes to procure insurance for another, and, unjustifiably and through his fault or neglect, fails to do so, will be held liable for any damage resulting therefrom." 29 Am.Jur. 561, Insurance, Sec. 163; see also Couch on Insurance 2d, Sec. 25:37. "An agent or broker who undertakes to procure insurance in accordance with instructions impliedly undertakes to give notice to the owner in the event of his failure to procure such in-

surance." 29 Am.Jur. 562, Insurance, Sec. 164; see also Couch on Insurance 2d, Sec. 25:47. "An insurance broker, particularly one who acts as general agent for insured and who undertakes to keep the property insured from year to year, is under a duty to exercise good faith and reasonable diligence to procure the insurance on the best terms he can obtain; and in this connection proper diligence requires him to canvass the market and have adequate knowledge as to the different companies and terms available." 44 C.J.S. Insurance § 172, p. 861; see also annotation, 29 A.L.R. 2d 171; Cunningham v. Holzmark, 225 Mo. App. 762, 37 S.W.2d 956; Harris v. A. P. Nichols Inv. Co., Mo.App., 25 S.W.2d 484; Kaw Brick Co. v. Hogsett, 73 Mo.App. 432; Couch on Insurance 2d, Sec. 25:46; Appleman, Insurance Law and Practice, Sec. 8841. Our conclusion is that plaintiff's evidence was sufficient to show failure of Swade to exercise reasonable skill, care and diligence in replacing the Aetna insurance.

Even so Swade contends this could not have been the proximate cause of plaintiff's loss because plaintiff did not prove that the underwriters at Lloyds, London would have issued a jeweler's block policy which would have covered plaintiff's second burglary loss. Swade says the situation is the same as in the Rayden case, in which the court said (151 N.E.2d l. c. 65) a verdict should be directed where there was no reasonable basis for concluding that such a policy would have been obtainable. See also DeWees v. Cedarbaum, 381 P.2d l. c. 836. However, Swade is wrong in claiming its sole duty (under the evidence herein) was to get the insurance from Lloyds and also overlooks its slow start to do anything. In this case, plaintiff did show that the other Kansas City agency which carried some of plaintiff's insurance did, after plaintiff's second loss, get the coverage for plaintiff in an American company during December 1959 within five or six days after application and the next year got such a policy to replace it in the London market in a period of

about five weeks. There was no such evidence in the Rovella case (183 N.E. 377) emphasized by Swade, in which insurance had been cancelled because the plaintiff therein was not a desirable risk. Furthermore, Swade's witness, Frost of Sayre & Toso, who was handling the application to Lloyds said that Lloyds had developed the jeweler's block policy and that it had been copied by American companies, so it appears that Lloyds did issue such policies. Thus it does not conclusively appear that plaintiff was uninsurable in any reputable company. See Ursini v. Goldman, 118 Conn. 554, 173 A. 789, 793. Swade did have evidence that plaintiff was a poor risk because of previous fire losses in the building and theft losses of other companies in which plaintiff's owners had an interest; and that a jeweler's block policy was difficult to obtain and only issued for agents producing a lot of other business. However, these were jury issues.

Swade's other contentions (2), (3) do not require a directed verdict. Although plaintiff had notice of the expiration of the Aetna insurance on November 12th when the proof of loss was executed, nevertheless it was a jury issue as to whether plaintiff had notice that Swade had not procured insurance to replace it or would not do so very soon. At least, according to plaintiff's evidence they were given no such notice or warning.

Plaintiff's principal complaint is that Instruction No. 5, given at Swade's request, was erroneous. Instruction No. 1, given at plaintiff's request, was as follows: "The Court instructs the jury that if you find and believe from the evidence that on or about August 4, 1959, defendant Swade Insurance Company agreed for a valuable consideration to procure for plantiff and keep in effect Jeweler's Block insurance in the amount of $25,000.00 on a stock of jewelry, including diamond rings and watches, belonging to plaintiff and located at the premises of plaintiff at 306 West 9th Street, Kansas City, Missouri; and if you further

find and believe that said defendant did procure temporary Jeweler's Block insurance in the amount of $25,000.00 on said stock aforesaid; and if you further find and believe that said temporary insurance terminated or was cancelled before December 10, 1959; and if you further find and believe that said defendant failed to exercise reasonable skill, care and diligence in failing to keep Jeweler's Block insurance in effect for plaintiff on said stock aforesaid; and if you further find and believe that on or about December 10, 1959, a number of diamond rings and watches belonging to plaintiff were stolen from said premises and have never been recovered by plaintiff; and if you further find and believe that plaintiff suffered a loss from said theft due to the failure of said defendant to exercise reasonable skill, care and diligence to keep such insurance in effect, then your verdict shall be for the plaintiff."

Instruction No. 5 was as follows: "The Court instructs the jury that if you find and believe from the evidence that *following the cancellation by Aetna Casualty & Surety Company, defendant Swade Insurance Company attempted to place said Jeweler's Block insurance through Sayre & Toso in the London Market and was attempting to do so on December 10, 1959, and that in so attempting,* if you so find, defendant Swade Insurance Company *was in the exercise of reasonable skill, care and diligence,* and if you further find that the failure to keep said Jeweler's Block insurance in effect was not a failure on the part of Defendant Swade Insurance Company to exercise reasonable skill, care and diligence, then your verdict must be in favor of defendant Swade Insurance Company and against the plaintiff." (Emphasis ours.)

■ Plaintiff says the limitation "following the cancellation by Aetna" erroneously assumes an incorrect time when Swade's duty arose; and also that the instruction erroneously assumes Swade's sole duty was to attempt to place the insurance in the Lon-

don market through Sayre & Toso. We find these criticisms to be meritorious because there was evidence from which the jury reasonably could find Swade's duty commenced when it was told by Aetna on October 8th that it would cancel and asked to be notified as soon as the risk was replaced in another company and that Swade did nothing during the fifteen days prior to October 23rd or until four days after October 23rd when it was notified that the Aetna insurance would terminate on October 30th. Likewise, whether it was reasonable for Swade to rely solely on Sayre & Toso to place the insurance in the London market was an issue for the jury to be decided upon consideration of all the evidence, including availability of insurance by American companies, particularly in view of Swade's late start to do anything. In this connection, Swade contends that it could only get insurance in London through a broker authorized to act there and that this gave it the right to appoint a subagent who would be the agent of plaintiff, citing Sec. 79, Restatement of Agency, Second, and 2 C.J.S. Agency § 136b (1), p. 1359, claiming any failure of Sayre & Toso to act promptly and in sending the wrong kind of inspection reports to Lloyds when inspection reports were requested would not be Swade's responsibility. See also Couch on Insurance 2d, Sec. 25:14; 2 Am.Jur. 154–163, Agency, Secs. 196–205. However, Swade was not employed by plaintiff solely to get this insurance on the London market and was not relieved of its own duty to keep plaintiff insured by sole reliance on Sayre & Toso to get it there without plaintiff's knowledge or consent. It was not shown that plaintiff ever knew anything about Swade going to the London market. The vice of this instruction is that it authorized the jury to find that waiting until the Aetna insurance terminated, and then leaving it solely to Sayre & Toso to get new insurance without any notice of urgency or any effort to determine whether the insurance could be obtained elsewhere, was the exercise of reasonable skill, care and diligence. If this case is tried again, Swade should take this into consideration in preparing new instructions.

Swade also says plaintiff's contentions overlook the last five lines of Instruction No. 5 beginning "and if you further find." While this part alone could have been a converse of the principal finding required by Instruction No. 1, it does not cure the error in assuming that Swade's duty only commenced following the cancellation by Aetna and that Swade could be relieved of its duty by relying solely on Sayre & Toso thereafter. Neither is it harmless as assuming an unnecessary burden because connected with the first part of the instruction by the conjunctive "and." The trouble is that this instruction gives the jury an erroneous standard, as to the time when Swade's duty began and what it was, for the purpose of determining whether Swade did exercise reasonable skill, care and diligence.

■ Swade further contends plaintiff has not properly preserved for appellate review the claim that Instruction 5 incorrectly stated the time when Swade's duty began because not raised in the motion for new trial as required by Civil Rule 79.03, V.A. M.R. However, the motion for new trial does set out this entire opening part of Instruction 5 and says it is not a proper converse of Instruction 1 and also that it "minimizes the further duties and obligations with regard to keeping said insurance in effect." The failure to act promptly on notice that the Aetna insurance would be cancelled and the sole reliance on Sayre & Toso without regard to their lack of promptness after the insurance had expired are so closely related in determining Swade's duty that they should be considered together as one claim of error. Moreover, assuming either one as the extent of Swade's duty gave the jury a false standard for determining reasonable skill, care and diligence. If the case is retried, it should be submitted on instructions which do not have such defects.

Of course if the jury believed that Swade did not agree to keep plaintiff's insurance in effect as Swade had evidence to show, and as submitted in Instruction No. 6, a verdict for Swade would have been proper. That would also be true if the jury believed that, by the exercise of reasonable skill, care and diligence, Swade could not have obtained a jeweler's block policy for them between the time Aetna told Swade it would cancel and the date of the second theft. Nevertheless, it was error to give an instruction worded so as to cut down that period and incorrectly state when Swade's duty began and to submit as Swade's full compliance thereafter an attempt to place the insurance through one broker without regard to what that broker did or failed to do.

Other claims of error involve alleged improper questions, cross-examination and argument concerning moral element of the risk, prior losses in other companies in which plaintiff's officers were interested, and previous cancellation of insurance of one such company, as well as claimed misstatements of the law in argument and injection of improper and derogatory issues. As to some of these no objection was made, as to some others objections were sustained and some were not raised in the motion for new trial. If the case is retried, the parties should consider these claims and conduct the trial to avoid anything improper. However, we point out that plaintiff has the burden of proving the theft and the loss (as it recognized in its requested Instruction 1); and that matters reasonably affecting the risk involved are material to the issue of whether Swade could have obtained the insurance by the exercise of reasonable skill, care and diligence and thus the issue of proximate cause.

The judgment in favor of Aetna on Count I is affirmed and the judgment in favor of Swade on Count II is reversed and the cause remanded.

All concur.