**Flora F. BODINE, Plaintiff, Appellant,**

v.

**WOOD TECH CORPORATION, Defendant, Respondent.**

No. 32750.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1967.

Sherwood R. Volkman, St. Louis, for plaintiff-appellant.

Berthold, Bialson, Robinson & Corrigan, Sylvan H. Robinson, St. Louis, for defendant-respondent.

RUDDY, Judge.

Plaintiff brought this action to recover a $300 down payment she made on twenty-six trusses she ordered from defendant. but which plaintiff refused to accept when delivered. Defendant filed a counter-claim for the balance due. In a court tried case judgment was entered against plaintiff on her petition and in favor of defendant on its counterclaim. Plaintiff appealed.

Plaintiff's testimony as to the conversation and circumstances that took place at the time she ordered the trusses is diametrically opposed to that given by defendant's witnesses.

The evidence adduced in behalf of plaintiff shows that on or about August 28, 1964, plaintiff and her builder visited defendant's place of business where plaintiff spoke to Mr. Reed, an employee of defendant, and ordered from him twenty-six roof trusses for a house she was building. Plaintiff was unacquainted with technical building terms and said the builder was "not a professional builder." Plaintiff had no blueprints, build-

ing plans, or drawings, and no specifications. Plaintiff told Reed that she "wanted the 67-inch truss from the plate to the peak," explaining that she " * * * knew none of the technical terms, how they could figure it. That is why I came to him (Reed)." The overall length "across the building" was thirty-seven feet, one inch. The builder did not participate in the discussion. After a twenty-five minute discussion a written order was prepared by Reed in the presence of plaintiff and her builder. Plaintiff admitted that the order calling for twenty-six roof trusses with a pitch of five in twelve, 37 foot length, with 18½ inch overhang was prepared in her presence and was seen by her. Plaintiff could not be sure whether Reed explained what "five in twelve" meant, however, stating, "I would not have understood it." Plaintiff was given a copy of the order and acknowledged that there was stamped on the order the following:

"ACKNOWLEDGMENT
OF ORDER

Please check carefully and advise promptly of any correction. Once fabrication has started, this order is non-cancellable. Left over items may not be returned."

This order was identified in the record as defendant's Exhibit A. Plaintiff admitted the total price shown in the order was $598.02 and she paid on account at the time the order was prepared the sum of $300.00, leaving a balance due of $298.02. Plaintiff said that Mr. Hurwitz, president of defendant corporation, did not participate in the conversation on her visit to the office of the defendant company. Plaintiff denied that Reed made any sketches or drawings to help her determine what the truss would look like after it was fabricated. When the trusses were delivered by defendant plaintiff refused to accept them because they were 97 inches from plate to peak instead of 67 inches, which plaintiff claims she ordered.

Defendant produced two witnesses: Mitchell M. Reed, Jr., who was employed by defendant company as a sales representative, and Mr. Hurwitz, President of defendant corporation, who was a registered professional engineer. Both of these witnesses participated in the conversation had with plaintiff on August 28, 1964. Their testimony shows that they spent approximately one-half hour with plaintiff and Mr. Kerber, her builder. Plaintiff told them that she had looked at trusses in defendant's yard and believed that these were the kind she wanted. She said she wanted to purchase some new trusses for a building she was erecting. Plaintiff did not have any plans or specifications. Virtually all of the conversation was had with plaintiff. They discussed the size of trusses that plaintiff wanted and when they asked plaintiff about the pitch she said " 'I don't know what pitch I want.' " Plaintiff told them that the width of the building was thirty-seven feet and one-half inch. They told her they were particularly concerned with the width of the building and asked her to double check that dimension and they said that someone later called them and verified the width as thirty-seven feet. Reed drew three different types of trusses, showing the different pitch on a piece of paper, using a protracter which he said was adjustable and could be adjusted to any pitch. He explained to plaintiff what a five in twelve pitch meant. They discussed the overhang and gave the plaintiff the maximum overhang which could be done for a five in twelve pitch, telling her that eighteen and one-half inches was the most that could be obtained. They said they made the five in twelve pitch because they understood that was what plaintiff wanted and said they would have given plaintiff the sixty-seven inch, from plate to peak, if that was what she ordered. They thought plaintiff understood what she was to get. After the drawings were made plaintiff selected the five in twelve pitch. In explaining what is meant by a five in twelve pitch the witnesses said, that it was basically an angular measurement. That a five in twelve pitch means, that for every twelve inches of horizontal dimension the truss or the rafter

would rise five inches. The witnesses said the eventual height was determined by what the horizontal run is and the horizontal run is a significant factor in determining what the height between the plate and the peak will eventually be. These two witnesses, in their testimony, reiterated that plaintiff did not give them the height and that they talked to her about the length, the size of the cord and the pitch, because this was interrelated to several other factors, namely, to the overhang, to the strength of the truss and to the appearance and these were things that were discussed with plaintiff. They said: " * · * * There was some difficulty in arriving at a decision as to which pitch she wanted. * * * " Finally, after they drew three different sketches of the pitch of the trusses she selected one of them, which was the five in twelve pitch.

Reed prepared the order, identified as defendant's Exhibit A, in the presence of plaintiff and her builder. Some of the figures appearing in Exhibit A were placed in there by Hurwitz. They said plaintiff was given a copy of the order as a receipt for her down payment and that she looked it over before she left the office. Plaintiff did not sign the order. The twenty-six trusses were fabricated in complete accordance with the order. Reed accompanied the delivery of the trusses and wanted to put some of them up on the roof for plaintiff to look at but she would not allow them to be placed there. The trusses were then taken back to the plant. Hurwitz said the trusses were resold for $11.00 a piece and plaintiff's account was credited with $286.-00, leaving a balance due of $12.02. This was the amount of the judgment rendered in favor of defendant on its counter-claim.

■ The only point relied on by plaintiff is that the court erred in rendering judgment for defendant because the "contract" prepared by defendant " * * * was ambiguous, and should have been construed against the maker." This rule of construction is inapplicable in this case because

plaintiff did not sign the order. The sole question in this case, as we see it, is which set of witnesses is to be believed. Briefly put, plaintiff's witnesses said she ordered a sixty-seven inch truss from plate to peak and defendant's witnesses said plaintiff ordered a truss with a pitch of five in twelve from a series of three drawings. This was a different size than plaintiff said she ordered but was the size defendant's witnesses said she ordered. Thus, we have conflicting verbal testimony. Defendant has some support for its version of the conversation that took place, in the written order it prepared, a copy of which was given to plaintiff.

■ We think that what we said in the case of Loague v. Loague, Mo.App., 407 S.W.2d 92, 1. c. 101 controls this case. We said: " * * * We are admonished by Section 510.310 RSMo 1959, 31 V.A.M.S. (Civil Rule 73.01(d)) that the judgment shall not be set aside unless clearly erroneous and due regard is to be given to the opportunity of the trial court to judge of the credibility of the witnesses. While we are not bound by the findings of the trial court it has been stated numerous times that we should not disturb such findings unless we can point to some good reason for doing so. Forbis v. Forbis, supra [Mo.App., 274 S.W.2d 800]. Where there is a sharp conflict in the testimony and the evidence does not greatly preponderate one way or the other, we resolve the conflict by according due deference to the findings of the trial judge because of his opportunity to observe the conduct and demeanor of the parties and their witnesses and to weigh, evaluate and assess their testimony. Oakes v. Oakes, supra. (Mo. App., 303 S.W.2d 940)"

■ We cannot say in the instant case that the judgment rendered below was clearly erroneous. A determination by the trial court depended upon the credibility it attached to the witnesses for the respective parties. It is obvious from the trial court's judgment that it believed the de-

fendant's witnesses. Under Section 510.-310, supra, and Civil Rule 73.01(d), V.A. M.R., we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. We defer to the findings and judgment of the trial court.

The judgment should be affirmed. It is so ordered.

ANDERSON, P. J., and MICHAEL F. GODFREY, Special Judge, concur.