Vernon B. PITTMAN, Plaintiff-Respondent,

v.

GREAT AMERICAN LIFE INSURANCE
COMPANY, Defendant,

and

Winford D. Willing, Defendant-
Appellant.

No. KCD 26611.

Missouri Court of Appeals,
Kansas City District.

Aug. 5, 1974.

John C. Russell, Raytown, for defendant-appellant.

Dorothy F. Fardon, Lake Lotawana, John J. Cosgrove, Kansas City, for plaintiff-respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Plaintiff, hereinafter referred to as "Pittman", putative insured under a "major medical policy", brought suit against defendants Great American Life Insurance Company, hereinafter referred to as "Company", putative insurer, and Winford D. Willing, hereinafter referred to as "Willing", owner of a general insurance agency who solicited Pittman for the insurance. The action was initiated in the Magistrate Court of Jackson County, Missouri. Trial therein resulted in a judgment in favor of the Company and Willing, from which

Pittman perfected an appeal to the Circuit Court of Jackson County, Missouri. The case was tried de novo before the circuit court sitting without a jury, resulting in a judgment for the Company and against Pittman, but in favor of Pittman and against Willing assessing Pittman's damages at $1,407.85. No findings of fact or conclusions of law were requested of or made by the trial court. Willing alone appeals from the judgment entered by the trial court.

Viewing the pleadings, evidence and briefs collectively, this court has concluded that Pittman's theory of recovery against the Company was for breach of an insurance contract (now moot, since Pittman did not appeal from the judgment entered in favor of the Company), while his theory of recovery against Willing was in tort, namely, that Willing negligently failed to timely notify him that his application for insurance had been rejected, thereby causing him damage.

The perimeter of appellate review of this case is drawn by Rule 73.01(d), V. A.M.R.: ". . . The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . .". See also: Long v. Kyte, 340 S.W.2d 623 (Mo.1960) and Independence Flying Service, Inc. v. Ailshire, 409 S.W.2d 628 (Mo.1966). Even though no findings of fact or conclusions of law were requested of or made by the trial court, it will be assumed that all fact issues were found in accordance with the judgment entered, and, absent the appearance of assigned errors, the judgment will be affirmed if it is correct under any theory supported by the evidence. Lossing v. Shull, 351 Mo. 342, 173 S.W.2d 1 (1943); McIntosh v. White, 447 S.W.2d 75 (Mo. App.1969); and Atherton v. Atherton, 480 S.W.2d 513 (Mo.App.1972).

Heeding the above principles, and bearing in mind Pittman's theory of recovery ferreted from the pleadings, the evidence and briefs, attention now focuses on whether the judgment entered by the trial court was "clearly erroneous". Willing levels three charges against the judgment which he claims renders it "cleary erroneous". After careful study and analysis of the three charges, and viewing them in conjunction with the argument portions of his brief, they may fairly be paraphrased as follows. First, the judgment is not supported by credible evidence and is contrary to controlling and applicable law. Second, the judgment is based on findings which lend no credence "to substantial credible evidence by and on behalf of Willing". Third, the judgment is based on testimony of Pittman which inherently lacked credibility and which should not have been admitted even though no objection was lodged thereto.

Only that evidence deemed necessary to dispose of Willing's charges leveled against the judgment, and concomitantly to resolve whether the judgment was "clearly erroneous", will be set forth.

Willing had owned and operated a general insurance agency in Kansas City, Missouri, for approximately twenty-five years. On December 22, 1969, Willing called on Pittman and recommended to him that he needed some form of medical insurance for himself and his sons. Pittman at that time was engaged in the moving and storage business, under the name of Vernon Pittman Van Lines, and Willing was his "insurance representative" for "general liability", "warehouse liability", "auto and truck fleet" and "fire insurance". Pittman acceded to Willing's recommendation concerning a need for some form of medical insurance for himself and his family (three sons, Roy, Ralph and Ronald) and an application was prepared by Willing and signed by Pittman to submit to the Company for issuance of a $500.00 deductible major medical policy covering Pittman and his three sons. At the same time Pittman signed a blank medical authorization and delivered his personal check to Willing in the amount of $34.60, made out to the Company, to cover the first quarter of premium.

The application prepared by Willing and signed by Pittman, dated December 22, 1969, immediately above Pittman's signature, contained the following: "I understand and agree that no coverage shall be in force until the policy is issued, and if issued, that coverage will be in force as of the effective date shown on the issued policy." Pittman testified that he did not read the application, either before or after signing it, although he orally supplied the information requested by Willing and contained in the application, and was unaware of the provision just mentioned. Pittman further testified that when he signed the application Willing said, ". . . if I didn't receive cancellation within ten days I can assume my policy would be issued . . ." and "It takes about ten days to get a policy. If it was going to be declined, it would be declined within that ten days." Willing, during the course of his testimony took sharp issue with Pittman regarding the matter just mentioned. Willing testified that Pittman read the application before signing it and he, Willing, at no time assured Pittman that he could assume the policy would be issued if it was not cancelled or declined within ten days.

When Willing left Pittman's place of business on December 22, 1969, he took the signed application, blanket medical authorization and first quarter premium check with him and apparently forwarded them to the Company's home office in Newark, New Jersey. The first quarter premium check cleared Pittman's bank on January 9, 1970.

Pittman testified that sometime during the first part of January, 1970, he called Willing's office, since he had never received the policy of insurance applied for, at which time Willing told him, ". . . that the policy, the reason—sometimes it takes a while to get it, don't worry about

it. As long as it was not rejected I would be covered." Pittman further testified that during the latter part of January, 1970, since he still had not received the policy of insurance, he again called Willing and Willing told him "The same thing, still takes time and it would be forthcoming." Willing denied both of the aforementioned conversations.

Around February 1, 1970, Willing called Pittman and told him to contact his doctor to get him to submit a medical report which the Company had requested. Pittman immediately went to his doctor and asked him to submit the report. Pittman testified that even though Willing called and told him to contact his doctor and get him to submit the requested medical report, he still had "no doubts at all" but that he was covered "by a medical policy of insurance" with the Company.

Company's Exhibit No. 3 was identified as a copy of an underwriting notice dated February 6, 1970, which it mailed to Willing, regarding Pittman's application for a major medical policy. Willing admitted that his office received the original underwriting notice which Exhibit No. 3 was a copy of. In part, the underwriting notice stated as follows: "We are unable to approve this application because of lack of underwriting info. After you notify the applicant of our action and refund any premium collected, please indicate such notification by signing this form and return it in the enclosed self-addressed envelope. If a reply is not received by 2/17/70 a letter of declination will be mailed to the applicant. Enclosed is refund check for $34.-60." Attached to the underwriting notice was a check dated February 5, 1970, drawn by the Company to the order of Vernon B. Pittman in the amount of $34.60. Pittman testified that he was never notified by Willing that the application had been rejected by the Company, nor did the Company ever write and notify him of its rejection of the application.

On February 23, 1970, Pittman's son Roy suffered an accident which required ambu-lance, hospital and surgical expenses total-ing $1,907.85. There was no dispute concerning the referred to expenses. Pittman testified that approximately six days after the accident he called Willing and told him, ". . . my boy was injured and he was in the Mercy Hospital and he just got out of intensive care and I wanted to report the accident to him, and I said, 'Now what do we do since I don't have the policy? What do we do about the bills for it?' He just said, 'Send the bills to me,' there would be no problem, it would be taken care of." Willing denied having made such statements to Pittman. Pittman sent the referred to bills to Willing, but, as can readily be assumed from this litigation, Pittman was never reimbursed for any of the expenses attendant to his son's accident.

Hearing nothing further from Willing, Pittman concluded that he had better contact someone else concerning the expenses incurred in connection with his son's accident. On May 13, 1970, he called the Company's office in Kansas City, Missouri, and was told by a Mrs. Krause in their office that his major medical policy "was cancelled on February the 26th". Pittman testified that this was the first time he was ever told, advised or notified that his application for major medical coverage had been rejected or turned down. He testified that the Company at no time prior to May 13, 1970, either verbally or by writing, ever told, advised or notified him that his application had been rejected and that he had no coverage. Pittman further testified that up to and including the time of the trial Willing at no time ever told him that his application had been rejected and he had no coverage. Pittman also testified that in view of his conversations with Willing, plus the absence of any notice to the contrary from the Company, he assumed that he was insured by the Company until being told otherwise on May 13, 1970. Pittman further testified, "[t]he very same day Mrs. Krause told me that my policy was cancelled I acquired new insurance", and had he known subsequent to December

22, 1969, and prior to February 23, 1970, that his application had been rejected he would have applied for like insurance with another company.

Willing testified that about the middle of February, 1970, he told Pittman that his application had been rejected and he discussed with him resubmission of the application for coverage only as to the boys. Pittman denied that Willing ever told him that the application had been rejected and further denied that Willing ever discussed resubmission of the application for coverage only as to the boys.

Pittman testified that on May 20, 1970, he received through the mail an envelope postmarked Kansas City, Missouri, May 19, 1970, with Willing's return address on it, addressed to him, which contained, absent any cover letter or explanation, a check dated February 5, 1970, drawn by the Company and made payable to his order in the amount of $34.60.

Concluding reference to the testimony, Willing testified that he would have earned a commission on the policy if it had been issued.

■ Willing, in support of his first charge leveled against the judgment, argues: that Pittman was bound by the following statement on the application, "I understand and agree that no coverage shall be in force until the policy is issued, and if issued, that coverage will be in force as of the effective date shown in the issued policy."; perforce, Pittman knew he had no coverage until the policy was issued. In support of this argument Willing cites cases dealing with suits on contracts. Although such argument and citation of authorities might well constitute a valid defense on behalf of the Company, they are of no avail to Willing in a tort action predicated on negligence in failing to give timely notice to Pittman that his application for insurance had been rejected. Willing's first charge leveled against the judgment manifests a complete misconcep-

tion of the legal theory supporting the judgment.

■ When an insurance agent undertakes to procure insurance for a party, with a view to earning a commission, he becomes the party's agent and owes a duty to the party to act with reasonable care, skill and diligence. Hall v. Charlton, 447 S.W.2d 5, 9 (Mo.App.1969); Zeff Distributing Co. v. Aetna Casualty & Surety Company, 389 S.W.2d 789 (Mo.1965); 44 C.J.S. Insurance § 172, p. 861; 43 Am.Jur.2d, Insurance, § 174, p. 230; and Wiles v. Mullinax, 267 N.C. 392, 148 S.E.2d 229 (1966). See also dictum in Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc., 402 S.W.2d 49, 53 (Mo.App.1966). If the agent is unable to effectuate the insurance he has a duty to timely so notify his client. Wiles v. Mullinax, supra; 44 C.J.S. Insurance § 172, p. 862, 43 Am.Jur.2d, Insurance, § 175, p. 232; and 29 A.L.R.2d 171, 184 (1953). See also Zeff Distributing Co. v. Aetna Casualty & Surety Company, supra. Failure of an agent to so notify his client will render the agent liable to the client for damages and the client, at his election, may sue the agent either for breach of contract or in tort for negligent breach of the agent's duty to timely notify the client that the requested insurance was not obtained. Wiles v. Mullinax, supra; Hall v. Charlton, supra; Zeff Distributing Co. v. Aetna Casualty & Surety Company, supra; and 44 C.J.S. Insurance § 172b, p. 863.

■ There was plenary evidence in this case comportable with the above enumerated principles of law, as adequately demonstrated by the evidence heretofore delineated, to support the judgment rendered by the trial court and to thwart all charges leveled by Willing that it was contrary to the law and not supported by credible evidence. In this latter respect, Willing is apparently "unwilling" to heed the well fixed principle that in court tried cases where the evidence conflicts sharply, appellate courts resolve the conflict by according due deference to the trial court be-

cause of its superior opportunity "to observe the conduct and demeanor of the parties and their witnesses and to weigh, evaluate and assess their testimony." Bodine v. Wood Tech Corporation, 423 S.W.2d 193, 195 (Mo.App.1967). See also Clinton v. Staples, 423 S.W.2d 1 (Mo.App.1967).

By his second charge leveled against the judgment, Willing asserts that the judgment is based on findings which lend no credence "to substantial credible evidence by and on behalf of Willing". Such is nothing more than an assertion that the trial court should have believed his testimony and not that of Pittman. The capable trial judge who heard this case was obviously aware of the sharp cleavage existing between Willing's testimony on the one hand and Pittman's testimony on the other. It is equally obvious by the judgment rendered that the trial judge chose to believe Pittman in the disputed areas and to disbelieve Willing. This court resolves the sharp conflict between the parties' testimony by according deference to the assessment given it by the trial judge. Bodine v. Wood Tech Corporation, supra; Clinton v. Staples, supra. To do otherwise would constitute a presumptuous disregard by this court of the trial judge's assessment of the credibility of the parties as witnesses, especially so since it was the trial judge who heard and saw the parties "in the flesh", while this court saw only that minimal image of them reflected by a sterile, printed record.

 Willing's third and final charge leveled against the judgment is an arcanum at best. It appears from the argument portions of Willing's brief that he is contending that it was error for the trial court to permit Pittman to testify as to statements allegedly made by Willing inducing him to believe that he was covered by insurance. If such be Willing's contention, it is totally without merit. Such statements, if not sine qua non of Pittman's tort action, were certainly relevant and admissible to the issue of Willing's negligent failure to timely notify Pittman that his application for insurance had been rejected and the companion issue of Pittman's reliance on such assurance to his detriment by not obtaining other insurance.

The judgment of the trial court was not clearly erroneous, and, accordingly is affirmed.

All concur.