Anna Mae RYAN, Plaintiff-Appellant,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Respondent.

No. 10209.

Missouri Court of Appeals, Springfield District.

Dec. 23, 1977.

Motion for Rehearing Denied Jan. 20, 1978.

R. Deryl Edwards, James F. DeNeen, Joplin, for plaintiff-appellant.

Malcolm L. Robertson, Joplin, for defendant-respondent.

Before STONE, P. J., and HOGAN and TITUS, JJ.

STONE, Presiding Judge.

In this jury-waived, court-tried action at law, plaintiff Anna Mae Ryan (Anna Mae), as the named beneficiary under a group life insurance policy issued by The Equitable Life Assurance Society of the United States (Equitable) to FAG Bearings Corporation (FAG) and affording life insurance coverage on FAG employees, seeks to recover $6,000 on account of the death of her husband, Charles L. Ryan (Charles). At the close of the evidence, the court took the case under advisement and in due time filed findings of fact and conclusions of law, found the issues in favor of defendant and against plaintiff, and accordingly entered judgment for defendant.

On May 8, 1972, Charles was employed by FAG at its plant in Joplin, Missouri, as a machinist on an hourly rate, with hours of employment from 3:00 p.m. to 11:00 p.m. Monday through Friday. Charles' last day of work at FAG was Thursday, October 26, 1972. During the afternoon of Friday, October 27, 1972, Charles called the FAG plant and told an unidentified person that he (Charles) "wouldn't be in for work" that day; and on Monday, October 30, 1972, he picked up his tools at the FAG plant.[1] On November 29, 1972, Charles (then 57 years of age) died.

The Equitable policy provided, in pertinent part, that coverage would cease automatically upon termination of employment and that *cessation of active work by an employee would be deemed to constitute termination of employment*, with other provisos that (1) an employee given a "leave of absence" might be regarded as an employee during such leave for a period not to exceed eleven months, (2) an employee dying within *thirty-one days* after termination of employment would be regarded as covered by the policy, and (3) an employee might, at his option, convert his coverage under the group policy to coverage under an individual policy on himself.

The trial court found that Charles was not given a leave of absence on Friday,

1. On Friday, October 27, 1972, Charles had a job interview with the personnel manager of Vickers, Inc., at its Joplin plant and was of-fered a job subject only to Charles passing a physical examination, which he subsequently did.

October 27, 1972; that his employment terminated upon his cessation of active work on Thursday, October 26, 1972; and that consequently, when he died on Wednesday, November 29, 1972, the *thirty-fourth day* after his cessation of active work for FAG, death benefits were not payable to Anna Mae under the Equitable group life insurance policy.

On this appeal, Anna Mae complains that *cessation of active work* does not "mean the last hour the employee physically worked," challenges the trial court's finding that Charles "was not given a leave of absence on Friday, October 27, 1972," and questions the court's application of definitions in the Master Policy which allegedly were more detailed than the terms in the employee's handbook.

■ Since this action was tried by the court, we "review the case upon both the law and the evidence as in suits of an equitable nature" with "[d]ue regard . . to the opportunity of the trial court to have judged of the credibility of witnesses." Rule 73.01, subd. 3, ¶¶ (a)(b). And, it becomes our appellate duty to sustain the judgment nisi unless no substantial evidence supports it, or the judgment is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32(1) (Mo.banc 1976); *Obermoeller v. Speck*, 544 S.W.2d 21, 22(1) (Mo.App.1976); *State ex rel. Shepherd v. St. Louis County Board of Education*, 542 S.W.2d 55, 60(11) (Mo.App. 1976).

■ The judgment under review is presumed to be correct and the burden of proving that it is erroneous rests upon appellant. *Crossgates Home Ass'n. v. Blomquist*, 537 S.W.2d 429, 430(1) (Mo.App.1976); *Pallardy v. Link's Landing, Inc.*, 536 S.W.2d 512, 515(2) (Mo.App.1976). Insofar as the testimony is conflicting, we accord deference not only to the trial court's findings as to credibility but also to that court's conclusions. *Stenzel v. State Department of Rev-*

*enue*, 536 S.W.2d 163, 168(7) (Mo.App.1976). See *Mize v. Sims*, 516 S.W.2d 561, 564(2, 3) (Mo.App.1974); *Pittman v. Great American Life Ins. Co.*, 512 S.W.2d 857, 858(1) (Mo. App.1974); *Noelker v. Wehmeyer*, 392 S.W.2d 409, 413(5) (Mo.App.1965).

Although the record is grossly incomplete and deficient (of which more shortly), the evidence in the transcript was neither unequivocal nor uncontroverted on the significant issues as to (1) what constituted "cessation of active work" within the contemplation and meaning of that language in the Equitable policy and (2) the time when Charles, the insured, ceased active work and thereby terminated his employment with FAG. In this situation, we necessarily "heed the well fixed principle that in court tried cases where the evidence conflicts sharply, appellate courts resolve the conflict by according due deference to the trial court because of its superior opportunity 'to observe the conduct and demeanor of the parties and their witnesses and to weigh, evaluate and assess their testimony.'" *Pittman v. Great American Life Ins. Co.*, 512 S.W.2d 857, 861–862(7) (Mo.App.1974). And, we are mindful that "the trial court, when sitting as the trier of fact, may believe all or none of the testimony of a witness, or accept it in part and reject it in part." *Mangan v. Mangan*, 554 S.W.2d 418, 421(4) (Mo.App.1977). Accord: *Cockrum v. Cockrum*, 550 S.W.2d 202, 205(2) (Mo.App. 1977); *Long v. Lincoln*, 528 S.W.2d 512, 513(3) (Mo.App.1975).

Having carefully reviewed the transcript with the foregoing precepts in mind, we have no doubt but that the record does support the findings, conclusions and judgment of the trial court. So determining, we need not, and accordingly do not, extend this opinion by chronicling and recording in tedious detail the testimony and evidence, in some particulars disparate or equivocal, as presented by the respective parties.

■ As mentioned supra, the record before us is grossly incomplete in that none of

plaintiff's thirteen exhibits (all of which were received in evidence) and none of defendant's eight exhibits (seven of which were received in evidence) were either included in the transcript or filed with the clerk of this court, although the case was submitted here on briefs some months ago. Hence the intendment and content of such exhibits are to be taken as favorable to the trial court's ruling and as unfavorable to plaintiff-appellant. *Empire Gas Corporation v. Randolph*, 552 S.W.2d 82, 84(4) (Mo. App.1977); *Godsy v. Godsy*, 531 S.W.2d 547, 553(9) (Mo.App.1975); *Lange v. Baker*, 377 S.W.2d 5, 7(4) (Mo.App.1964). See also *Wykle v. Colombo*, 457 S.W.2d 695, 699–700(4) (Mo.1970); *Suesserman v. Suesserman*, 539 S.W.2d 741, 743(4) (Mo.App.1976); *Fuzzell v. Williams*, 288 S.W.2d 372, 373(2) (Mo. App.1956).

▆ Having carefully reviewed the transcript and painstakingly examined the excellent briefs of opposing counsel and the authorities cited therein, we are constrained to conclude that the judgment of the trial court is supported by substantial evidence and is not against the weight of the evidence and that further extension of this opinion would have no precedential value. Accordingly, the judgment nisi is affirmed. Rule 84.16(b) V.A.M.R.

HOGAN and TITUS, JJ., concur.