George E. **BOLLINGER**, Mildred B. Bollinger, Richard O. Stroud and Mary Ann Stroud, Appellants,

v.

Van **SIGMAN** and Virginia Sigman, Respondents.

No. WD 29988.

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

Albert Copaken and Sylvia Copaken, Kansas City, for appellants.

Jimmie D. James, Independence, for respondents; James & Sperry, Independence, of counsel.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

The issue is whether there was sufficient evidence to support a finding of mutual mistake on the description in a deed which was sought to be reformed on that ground. The trial court found and concluded that the evidence was insufficient to support reformation and entered judgment against plaintiffs Stroud.

In a previous appeal, *Bollinger v. Sigman*, 520 S.W.2d 710 (Mo.App.1975), this court determined that a motion for directed verdict was properly sustained as to plaintiffs Bollinger, but remanded the case for receipt of Sigmans' evidence on the issue of Strouds' claim against them for reformation of the deed.

In 1956, the Bollingers purchased Lots 69 and 70, Sterling Meadows Resurvey, Jackson County, Missouri. Lot 70 abuts 48th Street on the north and Sterling Avenue on the west. Lot 70, to the north of Lot 69, has as its dimensions, 142.70 feet east and west, by 110 feet north and south. To its south is Lot 69, with platted dimensions of 140.09 feet east and west on the north, 105 feet north and south, and 137.61 feet east and west on its south boundary. The south Lot (69) is known as 4815 Sterling. The Bollingers built and lived in a house on Lot 70. In 1965, Mr. Bollinger had the south 80 feet of Lot 69 surveyed and staked, and then submitted a plot plan to the City of Kansas City in order to obtain a permit to build a house on that area. He then planted hedges four inches north of the boundary of the south 80 feet of Lot 69. This left the north 25 feet of Lot 69 which is here in controversy, the Strouds contending that the deed should be reformed to exclude that strip.

On March 12, 1970, the Bollingers conveyed to the Strouds by warranty deed "Lot 69, Sterling Meadows Resurvey." The Strouds lived on the property until August, 1971. Then, on August 23, 1971, the Strouds conveyed to the Sigmans by warranty deed, "Lot 69, Sterling Meadows Resurvey." The circumstances existing prior to the latter deed are these: The Strouds listed their property for sale with Pat Frisbie, a real estate agent for Wood Real Estate Company. On the last day of the listing, agent Francis Scott of Eugene Brown Realty Company, under a "co-op" agreement on the sale, showed the property to the Sigmans, and Scott told Mrs. Stroud that the Sigmans were interested in making an offer on the house. The Strouds signed a contract to sell the property on July 27, 1971, which described the property as the entire of Lot 69. Scott inquired of Mrs. Stroud as to the condition of the furnace, as to schools and the School district, and as to "whether colored were hiding on the other side of the north hedge boundary", but apparently no inquiry was made as to the boundaries or dimensions of the property intended to be conveyed.

At the time of closing, the hedge which Mr. Bollinger had planted was about 10 or 12 feet high, and was thick. The Sigmans were not shown any boundary lines prior to that time, and Mr. Sigman testified that he believed the lot surrounding 4815 Sterling was in the middle and constituted one-third of the entire block, that the hedge was simply misplaced, and he believed the lot was wider than 80 feet, "You're not going to put a 70 foot house on an 80 foot lot." In the prior appeal, this evidence was considered by this court as to what the Sigmans considered as to boundaries, which caused the remand, which was a note taken down by Louise Murray in a call from Mr. Sigman: "Says he figures he has 80′ front whereas survey shows 105 ft. Wants property staked & told him a survey Co. would have to do this." Mr. Sigman explained the note thus: "Yes. I called them and stated that somebody out here says I only have 80 feet. Would you please check your records, because mine says something else. So she said, 'Wait a minute, I'll go check it.' So she did. And she came back and said, 'You have 105 feet there and if you don't I'll find out why.'"

There is no document in the loan file of Safety Federal Savings and Loan Association, with which the Sigmans financed their purchase from the Strouds, that evidences any intent that the lot size was only 80 feet

north and south. Pertinent documents, such as a survey and property appraisal, confirm that both the lender and the Sigmans contemplated the purchase of all of Lot 69. The Strouds both testified to the effect that they did not intend to retain or reserve any of the property. There was, however, testimony that they thought they received from Mrs. Stroud's father, Bollinger, only the south 80 feet of Lot 69 which was, of course, not the description in his deed to them. Although Mrs. Stroud testified that she told real estate agent Scott, in Mrs. Sigman's presence, that the hedges were the lot boundaries, it was Mrs. Sigman's recollection that no one discussed the lot boundaries at this meeting which lasted only about a half hour.

About eight months after the property was purchased, Mr. Sigman had a series of conversations about where the exact property lines were. Disagreement ensued and this suit was filed in 1972 to reform the Stroud-Sigman deed. Much is made by appellants of the fact that the Sigmans did not mow the grass to the north of the hedge, the area treated by the Bollingers as their backyard, in 1971. The Sigmans explained that failure because that summer was dry and the grass did not need mowing, and because they were busy in farm activities.

Appellants' first point is directed toward the credibility of respondents' testimony. As above noted, there were conflicts in the testimony. Those conflicts and any contradictions in the testimony were for the trial court to resolve. *Pittman v. Great American Life Insurance Company,* 512 S.W.2d 857, 861–862 (Mo.App.1974); *Southwestern Bell Tel. Co. v. Crown Insurance Co.,* 416 S.W.2d 705, 711 (Mo.App.1967); *Roth v. Roth,* 571 S.W.2d 659 (Mo.App.1978). Note also Rule 73.01 3(b) requiring that on review, an appellate court due regard shall be given to the opportunity of the trial court to have judged the credibility of the witnesses.

■ Under this record, the Strouds have failed to show that a mutual mistake was made in formulating the description in the deed in question. They had the burden of proof by evidence clear and convincing to show that the deed sought to be reformed was insufficient to effectuate the intention of the parties to it. *Bryan v. Medical West Building Corp.,* 345 S.W.2d 389, 395 (Mo. App.1961), and cases cited. "A mutual mistake presupposes a prior or preceding agreement between the parties, and this agreement must be shown." *Allan v. Allan,* 364 S.W.2d 578, 581[1–5] (Mo.1963). The contract signed by the Strouds described all of Lot 69, as did their warranty deed, and as their prior deed from the Bollingers. No prior agreement to the contrary between them is shown, and considering the Sigmans' testimony, and their version of the transactions which the trial court was entitled to accept, there was no agreement to sell and convey anything less than all of Lot. 69.

Appellants say that the trial court misinterpreted and misapplied the opinion in the prior appeal, 520 S.W.2d 711, supra. As noted, all that case held was that it was remanded to receive the Sigmans' evidence on the issue of mutual mistake, which has now been done and the issue has been resolved against the Strouds.

■ Appellants contend that the court erred in excluding their Exhibit 30, a receipt from a surveyor to Mr. Bollinger for staking the South 80 feet of Lot 69. There was, of course, evidence that Mr. Bollinger did stake the area, marking it with concrete markers. As noted, he did not limit his conveyance to his daughter and son-in-law, the Strouds, but deeded all of Lot 69 to them. It is not stated in the point why and wherein the trial court erred, but notwithstanding that, it is the rule that the admission or rejection of evidence is not an issue in a court-tried case. *Webb v. St. Louis Nat. Bank,* 551 S.W.2d 869, 883 (Mo.App. 1977). Other charges are that the trial court failed to consider certain exhibits which were in evidence. There is no indication that the trial court failed to consider any evidence before it.

There is substantial evidence to support the trial court's judgment. It is not against

the weight of the evidence, and it does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment is affirmed.

All concur.