789 F.2d 172
 BEACON INDUSTRIES, INC. and Harvard Precision Components,
Inc., Plaintiffs-Appellees,
v.
WALTER KAYE ASSOCIATES, INC., Walter Kaye, Larry Kamerman,
Carol Varveris and Lumbermens Mutual Casualty
Company, Defendants.
Appeal of WALTER KAYE ASSOCIATES, INC., Defendant-Appellant.
 No. 292, Docket 85-7083.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 21, 1985.
Decided April 30, 1986.
 
 John W. Breen, Jr., Chabot, Breen & DuBorg, Hamden, Conn., for defendant-appellant.
 Sally S. King, Robinson & Cole, Hartford, Conn., for plaintiffs-appellees.
 Before OAKES, NEWMAN and KEARSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal in a diversity case concerns the duty of an insurance broker to obtain favorable rates for its client. Defendant-appellant Walter Kaye Associates, Inc. ("Kaye"), an insurance broker, appeals from the judgment of the District Court for the District of Connecticut (M. Joseph Blumenfeld, Judge) awarding $26,086.11 to plaintiff-appellee Beacon Industries, Inc. ("Beacon"), the insured. The amount awarded, less prejudgment interest, represents what the District Court concluded was an overpayment of approximately $17,000 charged to Beacon for its workers' compensation insurance due to the failure of Kaye to obtain a more favorable premium rate. Since we conclude that in the circumstances of this case no duty existed to obtain the more favorable rate, even if it was available, we reverse.
 
 
 2
 Rates for workers' compensation insurance are set by determining into which of several hundred classifications the employer's jobs fall and then rating the employer's claims history within the appropriate classification. The classifications are defined in a manual published and periodically revised by the National Council on Compensation Insurance. The Northeast Council on Compensation Insurance, a regional office of the National Council, issues opinions on the proper classification of particular employees at the request of insurance companies, insurance brokers, and insureds.
 
 
 3
 Kaye acted as the broker for Beacon's workers' compensation insurance for several years prior to April 10, 1979, at which time Beacon shifted its workers' compensation coverage to another broker, the Frank B. Hall Agency ("Hall"). During the years that Kaye handled Beacon's account, Beacon's machinists were classified under code 3632, applicable to general machinists, rather than code 3629, applicable to precision machinists, which would have resulted in a lower premium. Code 3629 was applicable to machinists of a business with "exclusive" involvement in armaments and aircraft work and where tolerances were not greater than .0001 of an inch. Sometime after Kaye lost Beacon's account, the National Council promulgated a written revision of the code 3629 classification, applying it more generously to companies where at least 50 percent of all machinists' operations are held to tolerances of no more than .001 of an inch. Beacon qualified under the revised code 3629, with its lower premium rate.
 
 
 4
 While Kaye still had the Beacon account, an employee of Hall solicited the workers' compensation insurance business from Beacon. He said that if he got the account, he would check with the Northeast Council to see if Beacon's machinists could be classified under code 3629. Kaye's personnel did not attempt to secure from the Northeast Council a favorable interpretation of code 3629. It was this failure that resulted in the imposition of liability for the difference in premium rates between codes 3632 and 3629. After Hall secured the account, it sought and obtained from the Northeast Council an interpretation of code 3629 that entitled Beacon to the lower rate.
 
 
 5
 The District Court concluded that the evidence did not show the date when the Northeast Council first changed its interpretation of code 3629. The change had not occurred before the end of 1977, at which time the official of the Northeast Council formerly in charge of classifications retired. As the District Court found, he had been a "stickler" who "did not permit any deviations from the definitions in the [National Council's] manual." After his retirement, classifications in the manual were gradually relaxed through interpretation on a case-by-case basis. The District Court found that, prior to the time Beacon terminated the services of Kaye, the Northeast Council had classified in code 3629 employees similar to Beacon's although there is no finding and no evidence that would support a finding that a generous interpretation of code 3629 had been used with sufficient frequency to establish a pattern of broader coverage.
 
 
 6
 In Connecticut, a broker "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part ... will render him liable to his principal for the resulting loss." Ursini v. Goldman, 118 Conn. 554, 559, 173 A. 789, 791 (1934). That statement was made in the context of a broker's negligent failure to make sure that insurance coverage was in effect. The District Court was of the view, and we agree, that Connecticut would hold an insurance broker to a standard of reasonable care in discharging the obligation, recognized elsewhere, to obtain the best rates available. See Zeff Distributing Co. v. Aetna Casualty & Surety Co., 389 S.W.2d 789 (Mo.1965); Roberts v. Sunnen, 38 Wash.2d 370, 229 P.2d 542 (1951). The District Court also inferred that this principle would be applied to impose on the broker a duty to secure for the insured a reduction of the premium called for in an ongoing policy.
 
 
 7
 We need not reach this question, however, since even if Connecticut were to adopt such a rule, we do not believe that it would apply it to the facts of this case to conclude, as did the District Judge, that the broker breached its obligation to obtain the best terms available. The "available terms," for purposes of a broker's liability, were the rates calculable on the basis of published classifications issued by the National Council. Even if the Northeast Council would have given Beacon a generous interpretation of the original version of code 3629 while Kaye still had the Beacon account, we do not believe that Connecticut would impose on Kaye a legally enforceable obligation to obtain such an interpretation. The case might be different if favorable interpretations had been given by the regional body in similar instances with sufficient frequency to effect a de facto modification of the published national classification. But that had not occurred in this case. In the absence of such a pattern, the broker is entitled to rely on published rate information. Otherwise, brokers will act at their peril in writing any insurance unless they inquire in each instance whether the appropriate rating bureau might be willing to make a new interpretation of existing standards that would benefit an insured. If an insured does not receive that type of service by its broker, it is free to change to a more aggressive broker, as Beacon did in this case, but it does not have a legal remedy to charge the broker for the premium reduction that would have resulted from such persistence.
 
 
 8
 The judgment of the District Court is reversed.